UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CIVIL ACTION |
| QUINSTON T. COLEMAN and YOLANDA A. COLEMAN | No. 15-569 |
| Debtors | Section "C" |
| | |
| QUINSTON T. COLEMAN and YOLANDA A. COLEMAN | BANKRUPTCY CASE NO. 14-11636 |
| v. | |
| BARCLAYS CAPITAL, PLC, ET AL | ADVERSARY PROC. No. 14-1046 |

**OPINION**

Before this Court is an Appeal from a denial of two motions for dismissal in a bankruptcy adversary proceeding by the United States Bankruptcy Court for the Eastern District of Louisiana ("the Bankruptcy Court") in favor of Plaintiff-Debtors, Appellees Qunston and Yolanda Coleman ("Appellees"). Rec. Doc. 3. Defendants-Appellants[1] ("Appellants") appeal the Bankruptcy Court's denial of their First Motion to Dismiss and Second Motion to Dismiss ("Motions to Dismiss"). Rec. Doc. 9 at 21–22. The Court has appellate jurisdiction pursuant to 28 U.S.C. §158. This Appeal is before the Court on the briefs, without oral argument. After reviewing the briefs of the parties, the record in the

---

[1] The Appellants are: Barclays Capital Real Estate, Inc.; Ocwen Loan Servicing, LLC; Seneca Mortgage Servicing, LLC; Mortgage Electronic Registration Systems, Inc.; Christiana Trust as Trustee of ARLP Trust 2; The Bank of New York Mellon Trust Company, N.A., as Grantor Trustee of Protium Master Grantor Trust ("BONY"); EquiFirst Corporation ("EquiFirst"); HomEq Servicing ("HomEq"); and Statebridge Company, LLC ("Statebridge").

case, and the applicable law, the Court finds that the judgment of the Bankruptcy Court should be AFFIRMED IN PART and REVERSED IN PART for the following reasons.

### I.     Background

According to the Appellees' First Amended Complaint, on November 5, 2007, they purchased their home at 7432 Silverado Drive in Marrero, Louisiana with financing through a Note and Mortgage in favor of EquiFirst Corporation in the amount of $224,170 ("the loan"). Bankr. Adv. Rec. Doc. 31 at ¶ 17. Unbeknownst to the Appellees, the home mortgage loan transferred ownership between several holders and eventually into the hands of Statebridge, which added hazard insurance to the account although the Appellees already maintained their own hazard insurance. *Id*. at ¶¶ 21–23. Because of the duplicative insurance, the Appellees' monthly payments increased significantly. *Id*. at ¶ 24. According to Appellants, on February 1, 2012, the Appellees defaulted on the home mortgage loan and did not cure the default after receiving notice from Statebridge. Bankr. Adv. Rec. Doc. 37 at ¶¶ 11–13, 72–75, Ex. 7. The Appellees requested an accounting of the loan and explanation for the increases, as well as refinancing or a mortgage loan modification. Statebridge either denied or failed to respond to these requests. However, it assured that it would not pursue foreclosure on the home until it could produce the original home mortgage note. Bankr. Adv. Rec. Doc. 31 at ¶¶ 25–30.

On June 26, 2012, an Assignment of Mortgage ("Assignment") was filed in the public records of Jefferson Parish, which purported to transfer interest in the mortgage to BONY c/o Statebridge. *Id*. at ¶ 32. However, the Appellees point to several irregularities of the Assignment and challenge its credibility. *Id.* at ¶¶ 33–34.

On September 13, 2012, BONY, claiming to be the holder of the Note and Mortgage, sought foreclosure on the Coleman's home by filing an Executory Proceeding in Louisiana state court. *Id.* at ¶ 35. On September 18, 2012, the state court issued an order commanding the seizure and sale of the home by the Jefferson Parish Sheriff. Bankr. Adv. Rec. Doc. 37 at ¶¶ 16,72-75, Ex. 9. On September 27, 2012, a writ of seizure and sale was issued by the State Court directed to the Sheriff. *Id.* at ¶¶ 17, 72-75, Ex. 10. On October 26, 2012, the Sheriff served the Appellees with a notice of seizure and sale. *Id.* at ¶¶ 18, 72-75, Exs. 11, 12.

The Foreclosure Sale was originally set for December 19, 2012, but was subsequently continued and then reset for April 24, 2012. Bankr. Adv. Rec. Doc. 31 at ¶37-39. The Appellees, through counsel, filed a temporary restraining order and request for injunctive relief, challenging the authenticity of the Assignment, the adequacy of the verification of BONY's attorney, and the accuracy of the amounts that BONY claimed were owing. Bankr. Adv. Rec. Doc. 37 at Ex. 14, p. 4. In addition, they stated several reconventional demands, citing wrongful use of executory process, violations of the Louisiana Unfair Trade Practices and Consumer Protection Law, and failure to provide proper notice. *Id.* at 5. According to the Appellees, the merits of this filing were never reached because they and BONY settled the action. Bankr. Adv. Rec. Doc. 31 at ¶ 41. The Appellees claim that under the settlement, they were to be provided a loan modification. However, Statebridge subsequently denied the modification. BONY reset its foreclosure petition without notice to the Appellees, and set the sheriff's sale for June 18, 2014. *Id.* at ¶¶ 42-50.

Seven days after the sale of their home, the Appellees filed for Chapter 13 bankruptcy in the Bankruptcy Court. Bankr. Adv. Rec. Doc. 31. On or about October 24, 2014, BONY sold the home to Christiana Trust. Bankr. Adv. Rec. Doc. 37 at ¶ 28, fn. 12. The Appellants filed a motion to dismiss the complaint and then a second motion to dismiss the amended complaint. Bankr. Adv. Rec. Doc. 26. On February 5, 2015, the Bankruptcy Court orally denied both motions. Bankr. Adv. Rec. Doc. 46. The Appellants now appeal the Bankruptcy Court's denial. Rec. Doc. 9.

## II.     Standard of Review

The standard of review for a bankruptcy appeal by a district court is the same when a court of appeals reviews a district court proceeding. *In re Killebrew*, 888 F.2d 1516, 1519 (5th Cir.1989). Accordingly, the Court reviews the Bankruptcy Court's conclusions of law *de novo,* findings of fact for clear error, and mixed questions of law and fact *de novo. See* Fed. R. Bankr. P. 8013; *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000). A district court will only reverse the Bankruptcy Court's finding of facts if, upon review of the entire record, the court is left with the "definite and firm" conviction that the Bankruptcy Court erred. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573 (1985). The burden is on the appellant to demonstrate that the Bankruptcy Court's findings are clearly erroneous. *In re Drehsen*, 190 B.R. 441, 442 (M.D.Fla.1995). A motion to dismiss under Rule 12(b)(6) may be granted when a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable interference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

4

(2009). The well-pleaded factual allegations of the complaint, taken as true, must raise the plaintiff's right to recover above the speculative level. *Twombly*, 550 U.S. at 555–56. Facts from which the court could infer the mere possibility of liability will not suffice. *Ashcroft*, 556 U.S. at 678 (quoting Fed. R. Civ. P. 8(a)(2)). A fortiori, a complaint may be dismissed when it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to prevail. *Twombly*, 550 U.S. at 560–61.

On a motion to dismiss, the court must take all well-pleaded factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). Nevertheless, "conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to complaint." *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974).

**III.   Law and Analysis**

The Appellants argue that dismissal should have been granted on several grounds, which the Court addresses below.

a. *Rooker-Feldman* doctrine

The Appellants first argue that the *Rooker-Feldman* doctrine deprives the Bankruptcy Court of subject matter jurisdiction to consider the Coleman's challenges to the foreclosure sale. Rec. Doc. 9 at 8. *Rooker-Feldman* in essence provides that "inferior federal courts do not have the power to modify or reverse state court judgments." *Reitnauer v. Texas Exotic Feline Found., Inc. (In re Reitnauer)*, 152 F.3d 341, 343 (5th Cir. 1998). The *Rooker-Feldman* doctrine deprives federal courts of subject matter

5

jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those arguments." *Turner v. Cade*, 354 Fed.Appx. 108, 111 (5th Cir. 2009) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)). Even if a plaintiff asserts claims not raised in the state court proceedings, if these claims are "inextricably intertwined" with a state judgment, then *Rooker-Feldman* bars the federal court's review. *Id*.

The Appellants argue that the Appellees have alleged injuries that were either caused by or were inextricably intertwined with the State Court's Foreclosure Action. Rec. Doc. 9 at 25. The Appellants claim that the issues raised in the First Amended Complaint would require the Bankruptcy Court to review the actions of the State Court in violation of the *Rooker-Feldman* doctrine. *Id*. These issues include (1) whether BONY had standing to initiate the foreclosure action; (2) the servicing of the loan, and (3) the amounts due on the loan as set forth in the Foreclosure Petition. *Id*. Bankr. Adv. Rec. Doc. 31 at ¶¶ 54-69, 71, 77–81, 97–103, 107. According to the Appellants, "The Appellees' chapter 13 bankruptcy plan cannot go forward unless the Bankruptcy Court sets aside the Foreclosure Action, thereby acting as an appellate court for the State Court proceeding." Rec. Doc. 9 at 25.

The Appellees reply that under the Fifth Circuit's holding in *Truong v. Bank of Am., N.A*, the *Rooker-Feldman* doctrine does not necessarily deprive the Bankruptcy Court of jurisdiction when considering causes of action connected to foreclosure by executory process. Rec. Doc. 11 at 9. In *Truong*, the Fifth Circuit considered a case in

which the plaintiff-appellant, Glory Truong, brought an action in federal court against Wells Fargo Bank, N.A. ("Wells Fargo") and Bank of America, N.A. ("BOA") for alleged violations of federal law that resulted in the wrongful foreclosure on her home. 717 F.3d 377, 379 (5th Cir. 2013). Truong claimed that Wells Fargo—which had filed a state court "Petition for Mortgage Foreclosure By Executory Process Without Appraisal" as to Truong's home—had attached to the petition a note that had not been properly endorsed and an affidavit that had not been authenticated, depriving Wells Fargo of standing to seek executory process. *Id.* at 380–81. Truong also claimed that BOA had misled her into believing that it would process her application for a loan modification and that the foreclosure process would be stayed pending its consideration of her application, causing Truong to forego challenging Wells Fargo's petition and the authenticity of its documentation. *Id.*

The Fifth Circuit held that *Rooker-Feldman* did not bar the district court's review because Truong "did not seek to overturn the state-court judgment, and the damages she requested were for injuries caused by the banks' actions, not injuries arising from the foreclosure judgment." *Id.* at 383. The Fifth Circuit reasoned that *Rooker-Feldman* does not apply if the federal court is not being asked to review and reject a state court decision arising out of judicial proceedings and if the source of the federal plaintiff's alleged injury is not an allegedly erroneous decision by a state court, but rather an allegedly illegal act by an adverse party. *Id.* at 382–83.  Thus, the Fifth Circuit concluded that Truong had brought "independent claims" under *Rooker-Feldman*. *Id.* at 385.

In the instant case, the Appellees allege, *inter alia*, that BONY misrepresented to them and the Court that they owned the Home Mortgage Loan, that they would settle the

Foreclosure Action, that they would grant the Appellees a loan modification, and that Statebridge would not pursue foreclosure until it could produce an original copy of the Mortgage Note to the Appellees. Bankr. Adv. Rec. Doc. 31 at ¶ 71. Thus, the Appellees allege that, like *Truong*, the Appellants' misrepresentation misled the state court into thinking the executory process was authentic and caused them to forego their opportunity to dispute the authenticity of the evidence and raise other objections in the state court proceedings. *Truong*, 717 F.3d at 383. Moreover, like Truong, the Appellees in their Amended Complaint do not ask the Bankruptcy Court to review and reject the state court proceedings, but rather seek to challenge the actions of the Appellants. The source of the Appellees' injuries are alleged to have originated with the Appellants' actions, not the state court judgment. Although Appellants argue that *Truong* is distinguishable, the Court does not find meaningful distinctions between the type of misconduct alleged and the relief sought in *Truong* that would require a different outcome.

The Appellants urge that the Fifth Circuit's holding in *Magor v. GMAC Mortg., L.L.C.*, 456 Fed.Appx. 334 (5th Cir. 2011) is applicable, rather than *Truong*. In *Magor*, the Fifth Circuit found that *Rooker-Feldman* barred the district court's consideration of a plaintiff's action for an enjoinment of a preexisting state judgment that granted the defendants an "Order to Proceed with Notice of Foreclosure Sale and Foreclosure Sale." *Id*. at 335–336. The Fifth Circuit wrote that "Magor's contentions implicate the validity of the state foreclosure judgment, and she seeks legal determinations that would allow her to retain possession of her home." *Id*. It found that as a result, her claims required reversal of the state court's foreclosure judgment and that reversal was in fact the object of her claim, rendering the action "inextricably intertwined" with the state court's

8

judgment. *Id*. at 336. Here, the Appellees do not seek to retain possession of their home or to reverse the state court's judgment. Rather, the Amended Complaint requests that the Bankruptcy Court award damages for the foreclosure and judicial sale, the loss of income caused by making payments for over two years, and to obtain an accurate accounting of their home mortgage loan. Bankr. Adv. Rec. Doc. 31 at ¶ 106–112. The Court notes that in *Truong*, the plaintiff likewise sought monetary compensation and damages, rather than a reversal of the state court's executory process. *Truong*, 717 F.3d at 381.

Thus, the Court finds that *Rooker-Feldman* does not deprive the Bankruptcy Court of subject matter jurisdiction.

  b. Res Judicata and Collateral Estoppel

The Appellants also argue that the Bankruptcy Court erred in concluding that res judicata and collateral estoppel do not bar the instant action. Rec. Doc. 9 at 27. The Court will discuss each argument.

  1. Res Judicata

To show that a subsequent action is barred by res judicata, a party must show that: (1) the first judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the causes or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. *Burguieres v. Pollingue*, 843 So.2d 1049, 1053 (La. 2003).

According to the Appellants, all five requirements are met. Rec. Doc. 9 at 29–30. The Court disagrees. First, as the Appellees point out, the parties are not the same. Rec. Doc. 11 at 13. However, more crucial is that the causes of action asserted in this suit did

not exist at the time of the final judgment in the state court litigation. For instance, the Appellees have brought suit for Appellants' violation of the automatic stay. As alleged in the Amended Complaint, BONY's possession of the property and/or proceeds from the sale and conversion of the property violates the automatic stay. Bankr. Adv. Rec. Doc. 31 at ¶ 66. This cause of action could not have existed at the time that the state court executed its final judgment, as the sale did not occur until after the judgment was rendered. In addition, the Appellees have alleged that BONY and Statebridge misrepresented that they would not pursue foreclosure until an original copy of the mortgage note could be produced and that they would settle the action. *Id*. at ¶¶ 71, 77. Again, these statements only became misrepresentations when the Appellants chose to pursue foreclosure and breach the terms of the settlement by securing an order in the state court. The Court notes that some of the grounds for the action enumerated by the Appellees may have existed at the time of the state court's final judgment. However, the parties have not briefed the arguments for dismissing specific causes of action. Instead, Appellants ask the Court to dismiss the action in full. The Court finds that such an action is not warranted under res judicata.

    2. Collateral estoppel

Collateral estoppel is "an equitable doctrine which precludes relitigation of issues that were a necessary part of, and were actually decided in a prior judgment." *Matter of Lewisville Properties, Inc*., 849 F.2d 946, 949 (5th Cir. 1988). To establish its applicability, it must be shown that (1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the

determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action. *Id*.

The Court finds that Appellants' argument for collateral estoppel fails on the second prong of the above inquiry. The record shows that the issues raised in this action were not "actually litigated" in the prior action. For instance, as discussed above, the Coleman's allegation that the Appellants misrepresented their willingness to settle the action and postpone the foreclosure arose only after the completion of the executory process, and thus could not have been litigated in state court. Furthermore, the Appellants have not shown that the proper calculation of the outstanding principal balance on the loan and the alleged inauthenticity of the evidence relied upon were actually litigated in state court. Although the accuracy of the balance amount and the authenticity of the documents were assumed by the state court, the Court finds that the record does not show they were actually litigated. As the Fifth Circuit has noted, when considering whether collateral estoppel attaches, "[i]t is understood, of course, that a party shall have had a full and fair opportunity to litigate an issue before being bound by the result in a later trial." *Sidag Aktiengesellschaft v. Smoked Foods Products Co., Inc.*, 776 F.2d 1270, 1275 (5th Cir. 1985). Here, the Appellees have alleged that they were deprived of the opportunity to fully and fairly litigate the issue of documentary authenticity because they were misled by the promise of a settlement into abandoning their Temporary Restraining Order and Request for Injunctive Relief, which the Appellees purport raised the issue of defective title, and from otherwise litigating against the Appellants. Bankr. Adv. Rec. Doc. 31 at ¶¶ 40–41.

Appellants argue that documents in the Bankruptcy Court record demonstrate that the settlement alleged by the Appellees never existed, and thus cannot provide a basis for arguing that collateral estoppel does not apply. Rec. Doc. 14 at 20. However, at the motion to dismiss stage the trial court must take well-pleaded factual allegations of the complaint as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Appellants' request that this Court resolve a contested issue of fact by determining that no settlement agreement existed is therefore inappropriate at this time. Thus, the Court finds that collateral estoppel does not bar the Appellees' action from proceeding.

c. Failure to State a Claim

Finally, the Appellants insist that the Appellees have failed to state a claim upon which relief may be granted, raising five separate legal arguments for why the Appellees claims must fail. Rec. Doc. 9 at 34. The Court will address each below.

1. Louisiana Credit Agreement Statute

The Appellants argue that any causes of action relying upon the purported settlement between Statebridge/BONY and the Appellees are barred under the Louisiana Credit Agreement Statute ("Credit Agreement Statute"). The Credit Agreement Statute sets forth that a "debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and considerations, and is signed by the creditor and debtor." La. Rev. Stat. 6:1122. Per Appellants, the Bankruptcy Court referenced *Whitney National Bank v. Rockwell*, 661 So.2d 1325 (La. 1995) in its consideration of this issue. Rec. Doc. 9 at 35–36. In that case, the court stated that "the Louisiana statute does not address, one way or the other, any protection of unsophisticated borrowers or any exemption based on fraud,

misrepresentation, promissory estoppel or other equitable theory." *Whitney Nat. Bank*, 661 So.2d at 1331. Appellants point to subsequent Louisiana Supreme Court cases repudiating any ambiguity created by *Whitney National Bank* over whether the statute applied to fraud or misrepresentation, and affirming that the statute did apply to such situations. Rec. Doc. 9 at 35–36 (citing *Jesco Constr. Corp. v. Nations Bank Corp.*, 830 So.2d 989 (La. 2002); *King v. Parish Nat'l Bank*, 885 So.2d 540 (La. 2004)).

The Appellees rebut that a prior decision of another section of this Court is applicable to the instant case. In *Durham v. Vanguard Bank & Trust Co.*, the Eastern District of Louisiana considered a settlement agreement between a debtor who had become delinquent on a mortgage loan and Vanguard, the holder of the loan, whereby the debtor executed a quitclaim deed in favor of Vanguard. 858 F.Supp. 617, 618 (E.D. La. 1994). The district court held that Louisiana's Credit Agreement Statute did not reach the settlement agreement. It distinguished a "credit agreement", which the Credit Agreement Statute defines as "an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation," from a "settlement agreement," which Louisiana courts have defined as an "agreement between two or more parties to adjust their differences by mutual consent to prevent or put an end to a lawsuit." *Id*. at 621. The court found that although the settlement agreement between the parties fell within the scope of the definition of "credit agreement" contemplated by the Credit Agreement Statute:

> Because the underlying purpose of the comprehensive agreement was to compromise and settle all issues included in two lawsuits between the parties, and not specifically to extend credit to Durham, the Court concludes that the agreement at issue is a settlement agreement, not a credit agreement.

*Id*. Thus, the court denied Vanguard's motion to dismiss.

The Court finds that *Durham*'s reasoning is applicable to the instant case. The parties allegedly agreed to settlement in order to reach a compromise in a lawsuit, not specifically to extend credit to the Appellees. Under *Durham*, then, such an agreement does not fall under the purview of the Credit Agreement Statute, and need not have been in writing. Thus, the Court finds that although the Bankruptcy Court's reliance on *Whitney National Bank* may have been in error, the Bankruptcy Court nevertheless did not err in refusing to dismiss the action on this ground.

2. BONY's standing

The Appellants argue that the Appellees' argument that BONY lacked standing to file the Foreclosure Action is without merit and that claims relying on this argument should be dismissed. Rec. Doc. 9 at 37. The Appellants point to Louisiana's Uniform Commercial Code, which provides that a "holder" of a negotiable instrument is entitled to enforce that instrument. La. R. S. 10:3-301. The Code defines a holder as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." La. R. S. 10:1-201(b)(21). The Appellants maintain that under these provisions, BONY became a holder of the Note when Equifirst, to which the note was made payable, endorsed it "in blank" and transferred possession to BONY. Rec. Doc. 9 at 38. Moreover, in Louisiana, a mortgage is accessory to the obligation that it secures. La. Civ. Code art. 3282. Therefore, even if, as the Appellees allege, BONY was never "assigned" the Mortgage, BONY was still entitled to enforce it.

The Appellees do not disagree with much of this argument. Rather, they insist that even though an assignment of the mortgage is not required under law, BONY's

14

representation of the Assignment's credibility in the state court proceeding was still fraudulent. Rec. Doc. 11 at 21. The Appellees argue that had the Assignment's authenticity been litigated in state court, the court may not have ever issued its executory order, or the order could have been subsequently vacated. *Id*. However, the Court finds that the Coleman's logic does not overcome Appellants' argument. Even assuming the falsity of the assignment, BONY would not have been deprived of standing to pursue the executory order based on the inauthenticity of the Assignment. Thus, the Court finds that the Bankruptcy Court erred in failing to dismiss the Appellees' claim that BONY lacked standing to file the Foreclosure Action based on the alleged inauthenticity of the Assignment.

      3.   Nullity

The Appellants claim that the Appellees' attempt to "unwind and vacate" the Foreclosure Sale and Executory Process Order must fail because they did not avail themselves of the means provided under the Louisiana Civil Code for doing so. Rec. Doc. 9 at 40–41. Louisiana law provides that once a creditor has complied with the requirements of executory process, if the debtor permits the seizure and sale to proceed without raising any objection by either a suit for injunction or a suspensive appeal, then all defenses and procedural objections to the process are waived. *Citizens Bank & Trust Co. v. Little Ford, Inc.*, 522 So.2d 1124, 1133 (La. Ct. App. 1988). The Appellees put forth several arguments as to why they should be permitted to pursue nullification of the state court order. Rec. Doc. 11 at 23–24. However, the Court finds that it need not reach these arguments, as the Appellees' attempt to seek nullification runs afoul of *Rooker-Feldman*.

In their Amended Complaint, the Appellees do not state that they seek nullification, rather asserting generally that they seek damages and "all other relief as is equitable and just." Bankr. Adv. Rec. Doc. 31 at ¶112. However, in the brief in opposition, the Appellees state that they do in fact seek nullification. Rec. Doc. 11 at 24. The Fifth Circuit held that federal suits that seek to nullify a state court judgment are barred by *Rooker-Feldman*. *Turner v. Chase*, 334 Fed.Appx. 657, 659-60 (5th Cir. 2009). Accordingly, the Appellees may not pursue nullification of the executory proceeding in the instant action. However, they may continue to pursue other forms of relief not barred by *Rooker-Feldman*.

  4. Violation of Automatic Stay

The Appellees allege in their Amended Complaint that the Appellants have violated the automatic stay of the bankruptcy proceedings by creating an "artificial default" and associated charges and fees on the outstanding mortgage balance. Bankr. Adv. Rec. Doc. 31 at ¶60. The Appellants object that there was no violation of the automatic stay because under Louisiana law, ownership of property sold at a sheriff's sale is transferred at the moment of adjudication to the successful bidder. Rec. Doc. 9 at 27. Under the Louisiana Code of Civil Procedure:

> Within fifteen days after the adjudication, the sheriff shall pass an act of sale to the purchaser, in the manner and form provided by law. The act of sale adds nothing to the force and effect of the adjudication, but is only intended to afford proof of it.

La.C.C.P. art. 2342. The language of Article 2342 shows that the "act of sale" which follows the adjudication is ministerial in nature, and that the rights associated with purchase do indeed pass to the purchaser at the time of the adjudication. Louisiana courts have affirmed this principle. In *Wells Fargo Bank Minnesota, N.A. v. Foret*, the

16

Louisiana Fourth Circuit Court of Appeal found that a purchaser became the owner of properties sold at a sheriff's sale "at the time its bid for the property was accepted" and that any rights [the previous owner] had in the property were terminated at that time. 894 So.2d 492, 495–96 (La.App. 4. Cir. 2005). Thus, ownership of the home passed from the Appellees to BONY at the time of the sheriff's sale, and the automatic stay was not violated by the Appellants' subsequent actions.

The Court does not find res judicata or collateral estoppel applies to this issue, as the Appellees urge. Rec. Doc. 11 at 24–25. The Bankruptcy Court denied the Appellants' Motion for Relief from Stay at the same hearing wherein it denied the instant motions to dismiss, and the Appellants have properly appealed the issue of whether the automatic stay extends to the home.[2] The Appellees also argue that "if the transfer of the ownership of the Home to Appellants is nullified, then the continued possession of the Home by Appellants violates the stay. . ." Rec. Doc. 11 at 24. However, the Court has already found that a nullification action is barred by *Rooker-Feldman*. Therefore, the Court finds that the Bankruptcy Court erred in failing to dismiss this cause of action.

5. RESPA

Finally, the Appellants argue that the Appellees have failed to state a claim under the Real Estate Settlement Procedures Act ("RESPA"). Rec. Doc. 9 at 43. RESPA provides that if any servicer of a federally related mortgage loan receives a qualified written request ("QWR") from the borrower for information relating to the servicing of such loan, that the servicer must provide a written response acknowledging receipt of the correspondence within 5 days. 12 U.S.C. § 2605(e)(1). A QWR is written correspondence

---

[2] *Transcript*, Case No., 14-1046 (Bankr. E.D. La. Jan. 16, 2015) [Doc. 50] at p. 43:2122.

17

that enables the servicer to identify the name and account of the borrower and includes a statement of the reasons for the belief of the borrower that the account is in error or provides sufficient detail regarding other information sought by the borrower. 12 U.S.C. § 2605(e)(1)(B). The Fifth Circuit has held that to state a viable claim under § 2605(e), plaintiffs must plead that their correspondence met the requirements of QWR, that the servicer failed to make a timely response, and that this failure caused them actual damages. *Williams v. Wells Fargo Bank, N.A.*, 560 Fed.Appx. 233, 241 (5th Cir. 2014).

In the Amended Complaint, the Appellees allege that they sent a QWR and that Statebridge acknowledged receipt of the QWR but did not timely respond to the request for written information. The Appellees further allege that this failure entitles them to statutory fees for violation of RESPA. Bankr. Adv. Rec. Doc. 31 at §§ 94–96. Under the Fifth Circuit's holding in *Williams*, this pleading is insufficient to sustain a RESPA claim.

Moreover, Appellants urge that in order to claim statutory damages under RESPA, the Appellees must allege a pattern or practice of RESPA violations. Rec. Doc. 9 at 44. However, the case cited to by Appellants does not hold that a pattern or practice must be alleged in the pleadings. Rather, in *Castrillo v. American Home Mortgage Inc.*, another section of this Court considered a motion for summary judgment and dismissed the RESPA claim because the plaintiff had failed to put forth evidence showing the necessary elements. Civ. A. 09-4369, 2010 WL 1424398, *8 (E.D. La. 2010). Thus, the Court declines to hold that a pattern or practice must be alleged in the pleadings to sustain a claim for statutory damages under RESPA.

The Court finds that the Appellees failed to allege a claim under §2605(e) RESPA. However, given that the instant action is still in the pleading stage, the Court finds that the claim should be dismissed *without prejudice*, and leave should be given to the Appellees to re-plead this claim in conformity with the Fifth Circuit's requirements.

### IV. Conclusion

Accordingly,

Based on the foregoing discussion, IT IS ORDERED that the Bankruptcy Court's denial of Appellants' motions to dismiss is AFFIRMED IN PART, and REVERSED IN PART, and the matter is REMANDED for further action consistent with this Opinion. Rec. Doc. 3.

New Orleans, Louisiana this 5th day of October, 2015.

_____
UNITED STATES DISTRICT JUDGE